# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00256-CV

---

**Texas Commission on Environmental Quality, Appellant**

**v.**

**Sierra Club and Ken Paxton, Attorney General of Texas, Appellees**

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-006941, THE HONORABLE JAN SOIFER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The Texas Commission on Environmental Quality (the Commission) sued Ken Paxton, Attorney General of the State of Texas, seeking declaratory relief from compliance with an attorney general decision ordering the Commission to disclose certain information requested by the Sierra Club. *See* Tex. Gov't Code § 552.324 (authorizing suit against attorney general by governmental body that seeks to withhold information attorney general has ordered disclosed pursuant to Public Information Act). The Sierra Club intervened, seeking a writ of mandamus to compel the disclosure of the responsive documents. *See id.* § 552.321 (waiving sovereign immunity for requestor seeking mandamus to compel disclosure). The Sierra Club and the Commission filed competing motions for summary judgment. The district court denied the Commission's motion, granted the Sierra Club's, and ordered the Commission to produce the requested documents to the Sierra Club. The Commission then perfected this appeal. We will affirm the district court's summary judgment.

**BACKGROUND**

On July 1, 2019, the Commission received a request pursuant to the Public Information Act (PIA) for documents and records relating to the Commission's proposed or final Development Support Document entitled "Ethylene Oxide Carcinogenic Dose-Response Assessment" and documents and records relating to the Commission's action to create a unit risk factor, unit risk estimate, or cancer-risk value or metric for ethylene oxide. The Commission released some information, asserted that some of the information was not subject to the PIA, and withheld some information on the ground that it was excepted from disclosure under PIA section 552.111, which provides that "[a]n interagency or intraagency memorandum or letter that would not be available to a party in litigation with the agency is excepted from the requirements of Section 552.021 [that public information must be made available to the public]." *Id.* § 552.111. The Commission asserted that it withheld information it maintained was protected by the deliberative process privilege. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 360 (Tex. 2000) (recognizing that "Texas courts and the Attorney General have consistently recognized that [the exception from disclosure provided by section 552.111] encompasses the common law deliberative process privilege, which protects certain agency communications from discovery" and that the privilege protects predecisional and deliberative communications related to agency's policymaking).

In conjunction with its decision to withhold certain records, the Commission sought a decision from the Attorney General's Open Records Division (ORD) that the records it withheld fell within the agency memorandum exception in Government Code section 552.111

2

because they were protected by the deliberative process privilege.[1]  *See* Tex. Gov't Code § 552.301(a) (governmental body that receives written request for information it wishes to withhold under section 552.111 must ask for decision from attorney general about whether information is within that exception), (b) (governmental body must ask for attorney general's decision and state exceptions that apply not later than 10th business day after date of receiving the request).  The Commission placed its letter requesting the Attorney General's decision into the Commission's interagency outgoing mailbox on July 17, 2019.  The ORD's letter decision determined that the Commission's username and password for a website were not information made public under the PIA and that it was not required to release it.  With regard to the Commission's request for a decision on whether it could withhold information based on section 552.111, the ORD stated that because the Commission did not timely request an attorney general decision "the requested information is public and must be released unless there is a compelling reason to withhold the information from disclosure."  *See id.* § 552.302 (if governmental body does not request attorney general decision within ten business days of receiving written request for information, requested information is presumed to be subject to required public disclosure and must be released unless there is compelling reason to withhold it); *Paxton v. City of Dallas*, 509 S.W.3d 247, 252 (Tex. 2017) ("In harmony with the policy underlying the PIA's prompt-production requirement, the governmental body asserting an exception must request an attorney general decision 'within a reasonable time but not later than the 10th business day after the date of receiving the written request.'  If a request for decision is untimely, 'the information requested

---

[1]  The Commission also asserted that it could withhold an email communication containing the Commission's username and password for the American Conference of Governmental Industrial Hygienists on the ground that it is not public information subject to the PIA.  The ORD determined that this communication could be withheld and it is not at issue in this appeal.

3

in writing is presumed to be subject to required public disclosure and must be released *unless there is a compelling reason to withhold the information.*'") (citations omitted). The ORD further determined that the Commission failed to establish a compelling reason to withhold the information and, consequently, the Commission could not withhold the requested information pursuant to Government Code section 552.111. *See* Tex. Att'y Gen. OR2019-26474.

The Commission then filed suit against the Attorney General seeking to withhold the records from the Sierra Club. *See* Tex. Gov't Code § 552.324 (governmental body may file suit against attorney general seeking declaratory relief from attorney general opinion issued under section 552.301). The Attorney General answered and requested that the district court render judgment declaring that the information must be disclosed to the requestor. The Sierra Club intervened and sought a writ of mandamus to compel the Commission to disclose the requested information. *See id.* § 552.321 (requestor may file suit for writ of mandamus compelling governmental body to make information available for public inspection if governmental body refuses to supply information that attorney general has determined is not excepted from disclosure). The Commission and the Sierra Club each filed motions for summary judgment. The district court granted the Sierra Club's motion and denied the Commission's. The Commission perfected this appeal.

**APPLICABLE LAW**

*The Public Information Act*

The purpose of the PIA is to provide public access "at all times to complete information about the affairs of the government and the official acts of public officials and employees." *Id.* § 552.001. "The Act mandates a liberal construction to implement this policy and one favoring a request for information." *City of Garland*, 22 S.W.3d at 356. On receiving a

4

request for information, a governmental body's public information officer must promptly produce public information for inspection, duplication, or both. Tex. Gov't Code § 552.221(a). Certain information is specifically excepted from required disclosure. *Id.* §§ 552.101-.154.

If a governmental body believes the requested information is excepted from disclosure, and if there has been no previous determination on the subject, the PIA requires the governmental body to state the exceptions it believes apply and request an opinion from the attorney general not later than the tenth business day after receiving the request. *See id.* § 552.301; *City of Garland*, 22 S.W.3d at 356. If the governmental body does not timely request an attorney general's opinion, the information is presumed public and must be released unless there is a compelling reason to withhold it. *See* Tex. Gov't Code § 552.302; *City of Dallas v. Abbott*, 304 S.W.3d 380, 381 (Tex. 2010). If the attorney general rules that the PIA does not exempt the information from disclosure or that a governmental body that has failed to timely request an opinion has not demonstrated a compelling reason to withhold the information, the public information officer must make it available to the requesting party or seek a judicial determination that the information does not have to be disclosed. *See* Tex. Gov't Code §§ 552.302, .324; *City of Garland*, 22 S.W.3d at 356. The governmental body has the burden of proving in a judicial proceeding that an exception to disclosure applies. *City of San Antonio v. Abbott*, 432 S.W.3d 429, 431 (Tex. App.—Austin 2014, pet. denied).

***Standard of Review***

We review a trial court's summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When the trial court does not specify the grounds for granting the motion, we must uphold the judgment if any of the grounds asserted in the motion and preserved for appellate review are meritorious. *Provident Life & Accident Ins. v. Knott*,

128 S.W.3d 211, 216 (Tex. 2003). When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland*, 22 S.W.3d at 356; *Abbott v. Dallas Area Rapid Transit*, 410 S.W.3d 876, 879 (Tex. App.—Austin 2013, no pet.). When both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented and, if we determine that the trial court erred, render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)).

This appeal requires that we construe the PIA. In general, matters of statutory construction are questions of law that we review de novo. *See Railroad Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). Our primary concern is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or the plain meaning leads to absurd results. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010). "Construction of a statute must be consistent with its underlying purpose." *Northwestern Nat'l Cnty. Mut. Ins. v. Rodriguez*, 18 S.W.3d 718, 721 (Tex. App.—San Antonio 2000, pet. denied).

## DISCUSSION

### Was the Commission's Request for an Attorney General Decision Timely?

In its first issue, the Commission asserts that its request for an attorney general decision was timely—i.e., that the request was made within ten business days of the Commission's receipt of the Sierra Club's request. *See* Tex. Gov't Code § 552.301(b). The

Commission received the Sierra Club's request on Monday July 1, 2019. It placed its request for an attorney general decision in interagency mail on Wednesday July 17, 2019. The parties agree that Thursday, July 4; Saturday, July 6; Sunday, July 7; Saturday, July 13; and Sunday, July 14 are not counted for purposes of determining what date constitutes the tenth business day from July 1. The Sierra Club argues that the tenth business day after Monday, July 1, 2019, was Tuesday, July 16, 2019, and that the Commission's July 17 request was therefore untimely. The Commission counters that, in addition to the weekend dates and the July 4 holiday, Friday, July 5 should not be counted because the Commission "was closed" on that day "in observance of the Independence Day holiday," and therefore July 5 was not a "business day" for purposes of calculating the deadline for requesting an attorney general opinion. As evidence that it was "closed" on July 5, 2019, the Commission submitted the affidavit of one of its legal assistants in which she attested that "the agency was closed July 4-5, 2019, in observance of the Independence Day holiday." Thus, according to the Commission, the tenth business day after July 1, 2019, was July 17, 2019, the day it placed its request in interagency mail. *See id.* § 552.308(b) (request to attorney general is timely if agency provides evidence sufficient to establish that request was deposited in interagency mail within specified time period). To resolve this dispute, we must determine the meaning of the term "business day" in the PIA—specifically whether it includes dates that an agency has unilaterally declared itself to be "closed."

Throughout the PIA, the statute mandates that virtually all deadlines are calculated using "business days." *See, e.g.*, *id.* §§ 552.221(d) (directing agency that cannot produce public information for inspection within ten business days after date information is requested to certify fact in writing and set date information will be available), .225(a) (providing

that requestor must complete examination of information not later than tenth business day after date information is made available), .2615(b) (providing that requestor must respond to itemized cost of copying requested public information within ten business days after date statement sent to requestor), .301(b) (request for attorney general opinion must be made within ten business days of receiving request for public information). The term "business day" is not defined in the statute. "When a statute uses a word that it does not define, our task is to determine and apply the word's common, ordinary meaning." *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014). In determining the common, ordinary meaning of a term, we may look to a "wide variety of sources, including dictionary definitions, treatises and commentaries, our own prior constructions of the word in other contexts, the use and definition of the word in other statutes and ordinances, and the use of the words in our rules of evidence and procedure." *Id.* The common meaning of "business day" is "a day that most institutions are open for business." *Black's Law Dictionary* 454 (9th ed. 2009). The term "business day" is defined in the Texas Government Code, and in other statutes, as a day other than a Saturday, Sunday, or legal holiday. *See* Tex. Gov't Code § 2116.001 ("'Business day' means day other than a Saturday, Sunday, or banking holiday for bank chartered under the laws of this state."); Tex. Est. Code § 452.004 (defining "business day" as "a day other than a Saturday, Sunday, or holiday recognized by this state"); Tex. Fam. Code § 86.0011 (defining "business day" as "a day other than a Saturday, Sunday, or state or national holiday"); Tex. Health & Safety Code § 775.0221 (defining "business day" as "a day other than a Saturday, Sunday, or state or national holiday"); Tex. Ins. Code § 542.051 (defining "business day" as "a day other than a Saturday, Sunday, or holiday recognized by this state"); Tex. Loc. Gov't Code § 143.034 (when computing five-business-day period for seeking review of fire or police department promotional exam results "a Saturday,

8

Sunday, or legal holiday is not considered a business day"); Tex. Prop. Code § 62.026 (defining "business day" as "a day other than a Saturday, Sunday, or holiday recognized by this state"). Similarly, for purposes of computing time periods, the Texas Rules of Civil Procedure exclude Saturdays, Sundays, and legal holidays when the last day of the time period falls on one of those days and also excludes Saturdays, Sundays, and legal holidays from computation of any time period of five days or less. *See* Tex. R. Civ. P. 4. And for the purpose of computing time periods, the Texas Rules of Appellate Procedure also exclude Saturdays, Sundays, and legal holidays when the last day of the time period falls on one of those days. *See* Tex. R. App. P. 4.1. None of these statutes or rules contemplates that a time period may be extended by not counting a day on which the person or entity required to meet the deadline has decided that it will be "closed."

The Legislature has defined both the national holidays and state holidays that the state recognizes. *See* Tex. Gov't Code § 662.003. The national holidays are: (1) the first day of January, "New Year's Day"; (2) the third Monday in January, "Martin Luther King, Jr. Day"; (3) the third Monday in February, "Presidents' Day"; (4) the last Monday in May, "Memorial Day"; (5) the fourth day of July, "Independence Day"; (6) the first Monday in September, "Labor Day"; (7) the 11th day of November, "Veterans Day"; (8) the fourth Thursday in November, "Thanksgiving Day"; and (9) the 25th day of December, "Christmas Day." *Id.* § 662.003(a). The state holidays are (1) the 19th day of January, "Confederate Heroes Day"; (2) the second day of March, "Texas Independence Day"; (3) the 21st day of April, "San Jacinto Day"; (4) the 19th day of June, "Emancipation Day in Texas"; (5) the 27th day of August, "Lyndon Baines Johnson Day"; (6) the Friday after Thanksgiving Day; (7) the 24th day of December; and (8) the 26th day of December. *Id.* § 662.003(b). The Legislature has also

9

designated the days on which Rosh Hashanah, Yom Kippur, or Good Friday fall as "optional holidays." *Id.* § 662.003(c). July 5th, the day after Independence Day, is not included in the list of holidays or optional holidays recognized by the State. Moreover, the Government Code provides that a state agency "shall have enough employees on duty during a state holiday to conduct the public business of the agency or institution." *See id.* § 662.004. Thus, even when a state agency observes a state holiday, it must be staffed sufficiently to conduct its public business. It must also be the case, then, that when an agency such as the Commission chooses to "close" its office on a day that is neither a national nor state holiday, such as July 5th, it must still have enough employees on duty to conduct its public business, which includes complying with the deadlines set forth in the PIA for handling requests for public information. *See Paxton*, 509 S.W.3d at 251 ("The prompt production of public information furthers the 'fundamental philosophy' that 'government is the servant and not the master of the people.'"); *see also* Tex. Gov't Code § 552.221 (governmental body must "promptly" produce public information after receiving request for disclosure, meaning "as soon as possible under the circumstances, that is, within a reasonable time, without delay"). We see no support in the common meaning of the term "business day," in the manner in which it has been defined in various statutes and court rules, or in the policy of the PIA, for concluding that the term "business day" excludes not only Saturdays, Sundays, and legal holidays, but also days that a state agency decides to "close" its office in extended observance of a national holiday. Therefore, July 5, 2019, constitutes a "business day" for purposes of computing the deadline for the Commission to have requested an attorney general decision about whether the information the Sierra Club requested was within the asserted exception to disclosure under the PIA.

The Commission also asserts that the ten-business-day period should commence on July 2, rather than July 1, because it maintains that it asked the Sierra Club to clarify its request pursuant to Government Code section 552.222(b). *See* Tex. Gov't Code § 552.222(b). That provision of the PIA provides, "If what information is requested is unclear to the governmental body, the governmental body may ask the requestor to clarify the request." When a governmental body acting in good faith requests clarification, the ten-day period to request an attorney general's opinion is measured from the date the request is clarified. *See City of Dallas*, 304 S.W.3d at 381, 384. The Commission argues that the following July 2, 2019 email from the Commission to a Sierra Club representative constitutes a request for clarification under section 552.222(b):

> We are in receipt of your public information request to the Texas Commission on Environmental Quality, PIR No. 48291 for information related to the TCEQ, proposed Development Support Document, Ethylene Oxide Carcinogenic Dose-Response Assessment (June 28, 2019).
>
> Please clarify whether your request is seeking confidential information. If you request confidential information, we will need to seek an Attorney General opinion for the requested confidential material or information. It may take up to 60 days for the Attorney General to reach a determination on our request.
>
> Please let me know how you would like to proceed.

On the same day, the Sierra Club representative responded: "Yes, we would like to receive all responsive information that TCEQ may believe is confidential, but that must be released under the TX Public Information Act." The issue, then, is whether the Commission's email constitutes a section 552.222(b) good faith request to clarify "what information" the Sierra Club was requesting because it was unclear to the Commission "what information" was included in the request.

11

For two reasons, we conclude that this email does not constitute a section 552.222(b) request for clarification. First, the email does not ask the Sierra Club to clarify the subject matter of the information it has requested but, rather, asks the Sierra Club if it is requesting information related to the subject matter of the request that the Commission considers to be confidential. The email begins by stating that the Commission has received the Sierra Club's request for "information related to the TCEQ proposed Development Support Document, Ethylene Oxide Carcinogenic Dose-Response Assessment (June 28, 2019)." This indicates that it was clear to the Commission what information the Sierra Club was requesting but simply wanted to determine whether the Sierra Club sought to obtain both confidential and non-confidential *categories* of responsive documents. Second, the email does not include the statutorily mandated statement regarding the consequences of failing to timely respond to a written request for clarification. *See* Tex. Gov't Code §§ 552.222(e) ("A written request for clarification or discussion under Subsection (b) [] *must include* a statement as to the consequences of the failure by the requestor to timely respond to the request for clarification, discussion, or additional information." (emphasis added)); .222(d) ("If by the 61st day after the date a governmental body sends a written request for clarification or discussion under Subsection (b) [] the governmental body, officer for public information, or agent, as applicable, does not receive a written response from the requestor, the underlying request for public information is considered to have been withdrawn by the requestor."). The failure of the Commission to include the statutorily mandated warning confirms that the Commission's email was not intended to be a section 552.222(b) request for clarification that would have any effect on the computation of the ten-business day deadline for requesting an attorney general decision. We overrule the Commission's first issue.

12

*Did the Commission Establish a Compelling Reason to Withhold Information?*

In its second issue, the Commission argues that, even if we conclude that its request for an attorney general decision was untimely, the information that it contends is covered by the deliberative process privilege may still be withheld because that privilege establishes a compelling reason for withholding the information under section 552.302. *See id.* § 552.302 (untimely request for attorney general decision gives rise to presumption that information must be disclosed absent a "compelling reason to withhold the information"). The issue before us, then, is whether the interests protected by the deliberative process privilege are sufficiently compelling to rebut the public-disclosure presumption that arises on expiration of the PIA's ten-business day deadline. *See Paxton*, 509 S.W.3d at 256 ("In some instances, important policies and interests that animate a statutory exception are compelling *in their own right*.").

The PIA does not define the reasons that may be "compelling" enough to withhold requested information following an untimely request for an attorney general decision. The Texas Supreme Court, however, has provided extensive guidance on the issue in its opinion in *Paxton v. City of Dallas*. *See id.* at 256-60 (analyzing whether attorney-client privilege is compelling reason to withhold requested information). The court explained:

> The meaning of the term "compelling" is of vital importance to our analysis because it represents a qualitative limitation on the justifications that permit withholding information from public disclosure. Neither *a* reason nor even a *good* reason would be sufficient to rebut the public-disclosure presumption. The reason must be "compelling."
>
> Our examination of dictionaries, treatises, and judicial constructions of similar language reveals the term "compelling" connotes urgency, forcefulness, and significantly demanding concerns. "Compelling" means "[u]rgently requiring attention" and "[d]rivingly forceful"' "not able to be resisted; overwhelming" and "not able to be refuted; inspiring conviction"; and "calling for examination, scrutiny, consideration, or thought."

13

*Id.* at 258. The court then analyzed whether the interests protected by the attorney-client privilege are sufficiently compelling to rebut the public-disclosure presumption and concluded that they are. The court explained that the "attorney-client privilege holds a special place among privileges" and is the "oldest and most venerated" and "the most sacred of all recognized privileges." *Id.* at 259. The court reasoned that the attorney-client privilege was a compelling reason to withhold documents presumed to be public because the privilege is "essential to the just and orderly operation of our legal system" and "has been a cornerstone of our legal system for nearly 500 years." *Id.* at 261.

Informed by the Texas Supreme Court's analysis in *Paxton*, we consider whether the deliberative process privilege also protects an interest sufficiently compelling to rebut the public-disclosure presumption. Section 552.111 exempts from disclosure "[a]n interagency or intraagency memorandum or letter that would not be available by law to a party in litigation with the agency." Tex. Gov't Code § 552.111. "Texas courts and the Attorney General have consistently recognized that this exception encompasses the common law deliberative process privilege, which protects certain agency communications from discovery." *City of Garland*, 22 S.W.3d at 361 (citations omitted). In contrast to the attorney-client privilege, the deliberative process privilege was not recognized in Texas until the year 2000. *See id.* at 360 ("Whether the deliberative process privilege exists in Texas and, if it does, the privilege's scope, are issues of first impression for this Court."). In recognizing the privilege, the court cautioned that its scope must be limited to resist the "'inevitable temptation' on the part of governmental litigants to interpret the exception as expansively as necessary to apply it to the particular records it seeks to withhold," which would result in allowing "the exception to swallow the [PIA]" and undermine the "strong statement of public policy favoring public access to governmental information and

14

[the] statutory mandate to construe the [PIA] to implement that policy and to construe it in favor of granting a request for information." *Id.* at 362-64.

The deliberative process privilege exemption in the PIA is modeled after an exemption in the Freedom of Information Act that protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "The purpose of the privilege is to protect the agency decision-making process from the inhibiting effect that disclosure of predecisional advisory opinions and recommendations might have on the 'frank discussion of legal or policy matters' in writing." *Skelton v. United States Postal Serv.*, 678 F.2d 35, 38 (5th Cir. 1982) (discussing statutorily created deliberative process privilege in Freedom of Information Act). The privilege, however, is qualified; it is not absolute. *Federal Trade Comm'n v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). "The deliberative process privilege is qualified and can be overcome 'by a sufficient showing of need.'" *Harding v. City of Dallas*, No. 3:15-CV-0131-D, 2016 WL 7426127, at *12 (N.D. Tex. Dec. 23, 2016). Courts consider multiple factors when determining whether the deliberative process privilege is overcome, including the relevance of the evidence, the availability of other evidence, the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions, the interest of the party seeking the information in accurate judicial fact finding, and the presence of issues concerning alleged governmental misconduct. *See Doe v. City of San Antonio*, No. SA-14-CV-102-XR, 2014 WL 6390890, at *2 (W.D. Tex. 2014) (citing *Smartwood v. County of San Diego*, No. 12CV1665-W BGS, 2013 WL 6670545 (S.D. Cal. Dec. 18, 2013) (holding privilege did not protect child welfare service agency's internal investigation from discovery in a section 1983 lawsuit after balancing relevant factors)). The deliberative process

privilege exception to disclosure is "'not an absolute shield' and is to be construed in the light of the act's mandate that information regarding the affairs of government and the official acts of those who serve the public be freely available to all." *Lett v. Klein Indep. Sch. Dist.*, 917 S.W.2d 455, 457 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (citing *Texas Dep't of Pub. Safety v. Gilbreath*, 842 S.W.2d 408, 412 (Tex. App.—Austin 1992, no writ)). Significantly, unlike the attorney-client privilege, our jurisprudence has not developed procedural safeguards against circumstances in which a party inadvertently waives the privilege by missing a deadline. *Cf.* Tex. R. Civ. P. 193.3(d); *In re Certain Underwriters at Lloyd's London*, 294 S.W.3d 891, 904 (Tex. App.—Beaumont 2009, orig. proceeding) (per curiam) (under Rule 193.3(d), party who fails to diligently screen documents before producing them does not waive claim of attorney-client privilege and rule was intended to restrict waiver in variety of situations that might arise from inadvertent disclosure of privileged documents).

For these reasons, we decline to hold that the deliberative process privilege is on equal footing with the attorney-client privilege such that its application constitutes a compelling reason to withhold information. Unlike the attorney-client privilege, the deliberative process privilege does not "reflect a foundational tenet in law," is not an "old and venerated" privilege, and is not unqualified. We conclude that the deliberative process privilege does not meet the Legislature's requirement that a justification for withholding information presumed public be "compelling." *See Paxton*, 509 S.W.3d at 258 ("The meaning of the term 'compelling' is of vital importance to our analysis because it represents a qualitative limitation on the justifications that permit withholding information from public disclosure."). We overrule the Commission's second issue.

16

*May the Commission Withhold Documents It Claims Are Not Responsive to the PIA Request?*

In its third issue, the Commission asserts that the trial court erred by rejecting the Commission's argument, raised for the first time in its third amended motion for summary judgment, that certain documents it seeks to withhold are not responsive to the Sierra Club's PIA request. In its summary-judgment motion, the Commission identified six documents that it claimed were not responsive to the PIA request. The Commission stated that it had produced these documents "in an abundance of caution, as there was not adequate time to review all 6,414 pages of potentially responsive information provided by various TCEQ staff before the request for a ruling to the Attorney General was submitted." Thus, the Commission sought a ruling from the district court that "certain portions of the information at issue are not responsive to the Sierra Club's [PIA] request, and therefore, should not be released." We conclude that the district court did not err in denying the Commission's summary-judgment motion seeking to withhold documents on the ground that they are nonresponsive to a PIA request. The PIA provides that "the only suit a governmental body may file seeking to withhold information from a requestor is a suit that . . . seeks declaratory relief from compliance with a decision by the attorney general *issued under Subchapter G.*" Tex. Gov't Code § 552.324 (emphasis added).[2] Section 522.301 states that a governmental body may ask the attorney general for a decision about whether the information is within one of the exceptions under Subchapter C. *Id.* § 522.301. Subchapter C lists the various exceptions to the general rule that information collected, assembled, or maintained by or for a governmental body is public information and is available by request. *Id.* § 552.002(a); *see Boeing Co. v. Paxton*, 466 S.W.3d 831, 832 (Tex. 2015). Thus, a governmental agency may not seek declaratory relief in district court unless the relief it seeks is

---

[2] The statute notes that "Subchapter G" refers to Texas Government Code sections 522.301-.309.

from an attorney general decision regarding application of one of the Subchapter C exceptions. There is no exception under Subchapter C for information that is claimed to be nonresponsive to a PIA request; therefore, the Commission could not assert nonresponsiveness of information as a basis for withholding it in the underlying suit. *See Thomas v. Cornyn*, 71 S.W.3d 473, 480-81 (Tex. App.—Austin 2002, no pet.).[3] The district court properly denied the Commission's request to withhold information on that basis. We overrule the Commission's third appellate issue.[4]

## CONCLUSION

Having overruled the Commission's three issues on appeal, we affirm the trial court's order denying the Commission's motion for summary judgment. We also affirm the trial court's order granting the Sierra Club's motion for summary judgment, ordering the Commission to produce to the Sierra Club the documents submitted in camera and marked with Bates Numbers 0001 through 6414, and awarding the Sierra Club attorneys' fees and costs.

---

[3] Consistent with the suit's being limited to review of the attorney general's decision regarding the application of a Subchapter C exception is Texas Government Code section 552.326, which provides that "the only exceptions to required disclosure within Subchapter C that a governmental body may raise in a suit filed under this chapter are exceptions that the governmental body properly raised before the attorney general in connection with its request for a decision regarding the matter under Subchapter G." *See* Tex. Gov't Code § 552.326.

[4] On appeal the Commission asserts that because the Sierra Club should not have prevailed on its motion for summary judgment, the district court's award of attorneys' fees and costs should be reversed. Because we conclude that the district court did not err in granting the Sierra Club's motion for summary judgment, we also affirm the award of attorneys' fees and costs.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Smith

Affirmed

Filed:   November 22, 2022